**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**LAFAYETTE-OPELOUSAS DIVISION**

| | | |
|---|---|---|
| **JEROME J. CURETTE** | * | **CIVIL ACTION NO. 05-1745** |
| **VERSUS** | * | **JUDGE DOHERTY** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Jerome J. Curette, born November 29, 1961, filed an application for supplemental security income payments on September 29, 2003, alleging disability as of June 1, 2002, due to a back injury resulting in the removal of three discs, right leg and hip pain, and vision problems.[1]

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support the Commissioner's decision of non-disability and that the

---

[1] Claimant filed a previous application in May, 1994, in which the Administrative Law Judge ("ALJ") rendered a favorable decision on October 21, 1996. Claimant's benefits stopped in April, 1997. He filed another application for benefits in June, 2002, which was denied initially and not pursued any further.

Commissioner's decision comports with all relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of F.R.Civ.P. 52, I find that the Commissioner's findings and conclusions are supported by substantial evidence, which can be outlined as follows:

**(1) Records from Dr. Richard Harmon dated April 18, 1995 to July 10, 2001**. Dr. Harmon saw claimant on March 27, 2000, for complaints of constant low back pain. (Tr. 135). On examination, claimant had some very doughy puffy tenderness over the lumbar area, which Dr. Harmon noted was common in reflex sympathetic dystrophy patients.[2] (Tr. 132). Claimant reported that his right toes sweated some at times, and his right foot was very cold to touch on examination. Dr. Harmon opined that this represented a reflex sympathetic dystrophy down into the right foot as well. He thought that the RSD was probably due to a combination of either the original injury versus the four surgeries that he had had since that time. He prescribed antioxidant vitamins and Neurontin for pain. (Tr. 133).

Claimant continued to complain of back pain on November 27, 2000, April 9, 2001, and July 10, 2001. (Tr. 128-31). Dr. Harmon prescribed Mobic, Neurontin, Flexeril, Vicoprofen as needed, and exercise. (Tr. 128-30).

---

[2]Diffuse persistent pain usually in an extremity often associated with vasomotor disturbances, trophic changes, and limitation or immobility of joints; frequently follows some local injury. STEDMAN'S MEDICAL DICTIONARY (27th ed. 2000).

**(2) Functional Capacity Assessment from Access Rehab dated November 10, 1998**. The report indicated that claimant could work at a medium level with modifications including frequent rest periods, changing positions from standing to sitting often, and limited bending within claimant's pain-free range of motion. (Tr. 138).

**(3) Consultative Examination by Dr. Malik Spady dated September 21, 2002**. Claimant had a history of being injured on the job in 1981, resulting in two disc removals and a fusion in 1989. (Tr. 147). He complained of pain and loss of muscular strength in the right leg, and occasional headaches lasting for about two to three hours. He also stated that he had been hit in the face in 1995 with a fan blade, which severely damaged his eye socket and had to be repaired. His medications included Neurontin, Mobic, Flexeril, and Vicoprofen.

Claimant could dress and feed himself. He could stand for about 30 minutes for a total of 3 ½ hours; walk on level ground for about half a block; sit for 15 minutes; lift 10 pounds, and drive a car for about 15 minutes.

On examination, claimant was 65.5 inches tall and weighed 179 pounds. (Tr. 148). He ambulated well, just slowly. He got on and off of the exam table and up and out of the chair without major problems. His right eye appeared normal, and his left had the start of a cataract.

Examination of the spine and extremities revealed 2+ pulses. Claimant had 5/5 upper extremity grip, intact fine and gross manipulations, and normal finger to thumb. Lumbar spine flexion was 30/90. He could go back on his heels, up on his toes, squat, and walk heel to toe.

Neurologically, claimant's lower extremities were 4/5 on both sides. Sensory and cerebellar were within normal limits. Cranial nerves were grossly intact. Deep tendon reflexes were +2.

Lumbar spine x-rays revealed an L3-5 fusion. (Tr. 149).

Dr. Spady's impression was that claimant had decreased range of motion in his lumbar spine. He opined that claimant could sit, stand, and walk with mild to moderate difficulty. He stated that claimant could lift, hear, speak, and handle objects without difficulty.

**(4) Eye Examination Report dated October 28, 2002**. Claimant's vision was 20/30 distant and 20/20 near in the right eye without glasses, and 20/20 with best correction. (Tr. 150). In the left eye, his uncorrected vision was 25/200 distant and 20/200 near, and 20/70 with best correction. He was restricted from climbing/working at heights, operating machinery, and contact sports. His diagnosis was corneal scarring of the left eye and mild myopia.

4

**(5) Residual Functional Capacity ("RFC") Assessment dated November 1, 2002**. The examiner determined that claimant could lift/carry 20 pounds occasionally and 10 pounds frequently. (Tr. 153). He could stand/walk and sit about 6 hours in an 8-hour workday. He had unlimited push/pull ability. He was able to frequently climb ladders, ropes, and scaffolds, never climb ramps and stairs, and occasionally stoop, kneel, crouch, and crawl. (Tr. 154). He had a limited field of vision due to left eye scarring. (Tr. 155).

**(6) Consultative Examination by Dr. Robert Wood dated November 22, 2003**. Claimant complained of low back and hip pain. (Tr. 160). He also reported headaches two to three times a week lasting about half a day with some blurry vision, which were relieved by Advil. He alternated sitting, lying, and standing for comfort.

Claimant stated that he could dress and feed himself, stand and sit for 15 to 20 minutes at a time, walk for 3/4 of a block, and lift up to 8 pounds. He did not drive or do household chores.

On examination, claimant was 67.5 inches tall and weighed 175 pounds. He ambulated with slight difficulty, and was somewhat slow. (Tr. 161). He got on and off of the exam table and up and out of the chair without difficulty.

Claimant's vision in the right eye was 20/40 and left was 20/200 with glasses. He had a notable scar on the cornea which could be seen with the naked eye.

On spine/extremities examination, claimant's pulses were 2+, with no edema, atrophy or deformity. He appeared to have some minimal decrease in strength of 4/5 in the hamstrings. Straight leg raise was negative. He could walk on his heels and toes, squat, and walk heel to toe. He appeared to have some decreased sensation to pin prick in L4-5 and L5-S1 distribution on the right leg. Range of motion was essentially normal in all extremities.

On neurologic examination, claimant had normal affect, and responded appropriately to all questions. (Tr. 162). His strength was 5/5 in all extremities. He had no cerebellar signs. Cranial nerves were intact. He had 2/4 deep tendon reflexes.

Dr. Wood's impression was low back pain with radiculopathy. He stated that no assistive device was required. He also diagnosed a corneal abrasion, with decreased visual acuity in the left eye.

**(7) RFC Assessment dated December 22, 2003**. The examiner determined that claimant could lift/carry 20 pounds occasionally and 10 pounds frequently. (Tr. 164). He could stand/walk and sit about 6 hours in an 8-hour workday. He had unlimited push/pull ability. He could occasionally climb, stoop, kneel, crouch, and crawl, and frequently balance. (Tr. 165). He was limited as to near and far visual acuity. (Tr. 166).

**(8) Orthopedic Consultative Examination by Dr. Stephen Wilson dated March 28, 2005**. Claimant complained of left neck and lower back pain. (Tr. 171). He reported that he periodically got pain in both of his legs. He was 5 feet 6 inches tall, and weighed 185 pounds. (Tr. 172).

On examination of the neck and lower back, claimant had no swelling, inflammation or muscle spasm in the neck area. He had good range of motion in the cervical spine. He complained of severe pain on forward flexion of the cervical spine, and on palpation in the lower back.

Examination of the upper extremities revealed no evidence of muscle spasm, weakness or atrophy. Claimant had no gross deformity or decreased range of motion of any of the upper extremity joints. Sensation was normal. Reflexes were present and equal bilaterally. Claimant had no numbness.

The lower extremities showed no muscle atrophy, weakness, or spasm. Claimant had no gross joint deformity. Reflexes were present and equal bilaterally. He had no numbness. He had good strength and equal pulses. Straight leg raising test was negative.

X-rays revealed anterior and posterior fusions from L4 to the sacrum. The fusion appeared to be solid. There was no evidence of any type of fracture or dislocation. Claimant had some degenerative changes and narrowing at the C7-T12

interspace.

Dr. Wilson noted that claimant was "somewhat hard to evaluate due to exaggeration of symptomatology." (Tr. 173). He observed that it was "also very questionable that this patient is motivated to return to any form of gainful occupation with his multiple surgical procedures and his degenerative disc disease." He opined that claimant needed to return to work that required only a minimum of bending, stooping, crawling, or climbing. He stated that claimant should not do any type of work where he had to lift more than 30 pounds or more than 10 pounds on a regular basis.

In the Medical Source Statement of Ability to do Work-Related Activities (Physical), Dr. Wilson opined that claimant could lift/carry 25 pounds occasionally and 10 pounds frequently. (Tr. 174). He stated that claimant could stand/walk about 2 hours in an 8-hour workday. Sitting and pushing/pulling were not affected by claimant's impairment. (Tr. 175). Claimant could occasionally perform all postural activities.

Claimant had occasional limitations as to reaching and handling. (Tr. 176). He could constantly finger and feel. He was limited as to seeing. He had no environmental limitations. (Tr. 177).

**(9) Claimant's Administrative Hearing Testimony**.  At the hearing on February 22, 2005, claimant was 43 years old.  (Tr. 181).  He had a 12-grade education.  He had past work experience as a mechanic and a construction worker.  (Tr. 171).  He had last worked in 1981 when he became injured.  (Tr. 182).

Claimant testified that he was taking Neurontin, Bextra, Prevacid, Flexeril, and Panlor.  (Tr. 183-85).  He complained of constant lower back pain, hip problems, right leg numbness twice a week, headaches twice a week, and nerve problems.  (Tr. 185-86, 188-89).  He took medication, and rested on the couch four to six hours a day to relieve the pain.  (Tr. 186).  He reported that his medications made him nauseated, drowsy and groggy sometimes.  (Tr. 194).

As to limitations, claimant testified that he could sit for about 15 to 20 minutes, and stand for between 15 and 25 minutes.  (Tr. 186).  He stated that he could walk about two blocks.  He said that he could not bend or squat.  He reported that he had to shift his weight constantly.  (Tr. 187).  He could pick up a gallon of milk.  (Tr. 188).

Regarding activities, claimant testified that he tried to help his wife around the house, but did not do any cooking or cleaning.  (Tr. 187).  He stated that he was able to bathe and dress himself at times, but had trouble putting on socks and getting his pants up.  He said that he drove very little.  (Tr. 194).

9

**(10) Claimant's Wife's Administrative Hearing Testimony**. Claimant's wife, Nancy Curette, testified that claimant had pain all of the time. (Tr. 191). She reported that he had to lie down a lot. She said that it was worse with weather changes.

**(11) The ALJ's Findings are Entitled to Deference**. Claimant argues: (1) the ALJ did not consider the conflicts in the opinions of Dr. Spady and Dr. Wilson; (2) the ALJ did not consider Dr. Harmon's diagnosis of RSD; (3) the ALJ failed to consider the effects of claimant's medications, and (4) this case should be remanded based on the new evidence of his admission to the hospital for injections.

As to the first argument, the record reflects that the ALJ considered the reports of Dr. Spady and Dr. Wilson. (Tr. 14-15). He noted that Dr. Spady found that claimant had decreased range of motion in the spine, and could sit, stand, and walk with mild to moderate difficulty, as well as lift, hear, speak, and handle objects without difficulty. (Tr. 14, 149). As to Dr. Wilson's opinion, the ALJ observed that claimant complained of severe back pain with any type of standing or lifting, which Dr. Wilson indicated was an "exaggeration of symptomatology." (Tr. 15, 173). The ALJ further noted that Dr. Wilson placed significant restrictions on claimant's functional abilities, finding that he could lift 30 pounds or 10 pounds on a regular basis, and stand/walk for two hours in an 8-hour workday. (Tr. 173-74).

In evaluating claimant's medical records, the ALJ stated that he did not doubt that claimant suffered from some pain and discomfort, but found that his testimony and allegations were not supported by the overall objective evidence. (Tr. 16). He cited both Dr. Wilson's and Dr. Spady's reports in making this determination, finding some restriction in claimant's ability but noting that claimant was only partially credible. This finding is supported by Dr. Wilson's opinion that claimant had exaggerated his symptoms. (Tr. 173). It is well established that the ALJ's assessment as to claimant's credibility is entitled to great deference. *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000). As the ALJ's assessment is supported by the evidence, I find that this argument lacks merit.

Next, claimant argues that the ALJ failed to consider Dr. Harmon's diagnosis of RSD. (rec. doc. 7, pp. 2-3). However, the record reflects that the ALJ specifically evaluated Dr. Harmon's records relating to RSD. (Tr. 14, 128-36). The ALJ noted that claimant continued to be treated conservatively for those symptoms with medication, therapy, and exercise. (Tr. 128-31). He further observed that Dr. Harmon referred claimant for a functional capacity assessment, which indicated that claimant was able to work at the medium level. (Tr. 138). These reports do not indicate that claimant continued to have symptoms of RSD. Thus, this argument lacks merit.

11

Next, claimant argues that the ALJ failed to properly address the side effects from his medications. (rec. doc. 7, pp. 2, 4-5). However, the record reveals that the ALJ specifically asked claimant about his medications at the hearing. (Tr. 183-85). Claimant also testified about the side effects from his medications, including nausea, drowsiness, and grogginess. (Tr. 194). Additionally, the ALJ cited 20 C.F.R. §§ 404.1529, 416.929, and SSR 96-7p, which require the ALJ to consider the side effects of medications, and specifically noted that he had considered the evidence relating to the types of dosages of medications used by claimant. (Tr. 15-16). Further, the medical records do not reflect that claimant complained of these side effects to his physicians. Thus, contrary to claimant's argument, the record reflects that the ALJ properly considered the side effects from his medications.

Finally, claimant argues that this matter should be remanded in light of new evidence relating to his two admissions to the hospital in late 2005 for injections into his back. (rec. doc. 7, pp. 6-7). When new evidence becomes available after the Commissioner's decision and there is a reasonable possibility that the new evidence would change the outcome of the decision, a remand is appropriate so that this new evidence can be considered. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). In order to justify a remand, the evidence must be (1) new, (2) material, and (3) good cause must be shown for the failure to incorporate the evidence into the record in a

prior proceeding. *Leggett v. Chater*, 67 F.3d 558, 567 (5th Cir. 1995).

Reviewing the materiality of the new evidence requires the court to make two separate inquiries: (1) whether the evidence relates to the time period for which the disability benefits were denied, and (2) whether there is a reasonable probability that this new evidence would change the outcome of the Secretary's decision. *Ripley*, 67 F.3d at 555.

In this case, the records to which claimant refers are not included in the administrative record or attached to his brief. Thus, it is impossible to determine whether these reports might have changed the outcome of the decision. Further, claimant indicates that the hospitalizations occurred in late 2005, which would be several months after the ALJ's decision of May 25, 2005. As this evidence does not relate to the relevant time period, remand is inappropriate. However, claimant might use this evidence as the basis for filing a new application.

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days

after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.** *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, **79 F.3D 1415 (5TH CIR. 1996).**

Signed this 11th day of July, 2006, at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE